# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

SPRINT COMMUNICATIONS
COMPANY, L.P.,

        Plaintiff,

vs.

BUTLER-BREMER MUTUAL
TELEPHONE COMPANY, CLEAR
LAKE INDEPENDENT TELEPHONE
COMPANY, COON CREEK
TELEPHONE COMPANY, FARMERS
COOPERATIVE TELEPHONE
COMPANY, GOLDFIELD
TELEPHONE COMPANY, HEART OF
IOWA COMMUNICATIONS
COOPERATIVE, MABEL
COOPERATIVE TELEPHONE
COMPANY, NORTH ENGLISH
COOPERATIVE TELEPHONE
COMPANY, FARMERS MUTUAL
TELEPHONE COOPERATIVE OF
SHELLSBURG, IOWA, d/b/a USA
Communications, WEBSTER-
CALHOUN COOPERATIVE
TELEPHONE ASSOCIATION, and
WINNEBAGO COOPERATIVE
TELECOM ASSOCIATION,

        Defendants.

No. C 14-3028-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS OR STAY**

_____

**TABLE OF CONTENTS**

*I.     INTRODUCTION ................................................................... 2*
*II.    LEGAL ANALYSIS ............................................................... 3*
    *A.   Grounds For Dismissal Or Stay ....................................... 3*
    *B.   Primary Jurisdiction ...................................................... 4*
        *1.  Arguments of the parties ......................................... 4*
        *2.  Discussion ............................................................. 6*
            *a.   The primary jurisdiction doctrine ..................... 6*
            *b.   Is referral to the agency appropriate? .............. 8*
            *c.   Is dismissal or a stay appropriate? .................. 10*
    *C.   Other Grounds For Dismissal ........................................ 11*
*III.   CONCLUSION ...................................................................... 12*

## I.     INTRODUCTION

In this action, plaintiff Sprint Communications Company, L.P., an interexchange carrier or IXC, seeks a refund of, and declaratory bar to, allegedly improper switched access charges by defendant local exchange carriers (LECs), from their intrastate and interstate switched access tariffs, for exchange of wireless communications between Commercial Mobile Radio Service (CMRS) carriers and the LECs that originate and terminate in the same "Major Trading Area" (intraMTA calls) where Sprint acts as an intermediary carrier.  Sprint alleges that it should not have been billed access charges, applicable to "long distance calls," for these calls, because these calls are "local calls"

2

subject to reciprocal compensation, pursuant to longstanding Federal Communications Commission (FCC) rules and federal appellate court decisions.[1]

This case is now before me on the defendant LECs' July 14, 2014, Motion To Dismiss Or Stay And Refer Issues To The Federal Communications Commission (docket no. 8). After an extension of time to do so, Sprint filed its Resistance (docket no. 17) on August 21, 2014, and the LECs filed a Reply (docket no. 25) in further support of their motion on September 15, 2014.

The LECs requested oral arguments on their Motion To Dismiss, because they contend that this case involves complex technical and policy issues in telecommunications regulation and the interpretation and application of orders, rules, and regulations promulgated by the FCC over the past 18 years, and, as such, that oral arguments will allow the court an opportunity to question counsel, which should assist the court. I do not find oral arguments to be necessary in this case, nor has my crowded schedule permitted the timely hearing of such oral arguments. Therefore, I will consider the LECs' Motion To Dismiss fully submitted on the parties' written submissions.

## II.    LEGAL ANALYSIS
### A.    Grounds For Dismissal Or Stay

The LECs first assert that Sprint's Complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because Sprint's claims are barred by application of the "filed rate doctrine" and "the voluntary payment doctrine." In the alternative, the LECs argue that Sprint's Complaint should be dismissed without prejudice, or that this action should

---

[1] Sprint's claims in its May 7, 2014, Complaint (docket no. 1) are framed as "breach of contract" (Counts I (Iowa defendants) and II (Minnesota defendants)) and "declaratory relief" (Count III (all defendants)).

be stayed, and the claims referred to the FCC, because the FCC has "primary jurisdiction" over Sprint's claims. Sprint disputes each of the LECs' grounds for dismissal or stay.

I conclude that I must consider, first, the LECs' alternative arguments for dismissal or stay in light of the FCC's "primary jurisdiction." If, indeed, the FCC has "primary jurisdiction," and the issues presented are properly referred to the FCC, it would be improper for me to circumvent the FCC's "primary jurisdiction" by considering whether Sprint's Complaint states claims upon which relief can be granted, and the FCC's determination on issues within its "primary jurisdiction" may be dispositive of the other grounds for dismissal asserted by the LECs. If, on the other hand, I need not defer to the FCC's "primary jurisdiction," then I would be free to consider whether dismissal of Sprint's Complaint pursuant to Rule 12(b)(6) is appropriate.

### B. *Primary Jurisdiction*
#### 1. *Arguments of the parties*

The LECs argue that application of the "primary jurisdiction doctrine" warrants dismissal of Sprint's Complaint, because referral to the FCC would have the following beneficial effects: (1) it would ensure national uniformity and consistency in deciding the legal issues that are at the heart of the more than 30 (and counting) complaints that Sprint has filed in various federal and state courts; and (2) it would allow the FCC to address the applicability of the LECs' switched access tariffs, to determine the effects of the FCC's own orders on those tariffs (including its 1996 *Local Competition Order* and its 2011 *Connect America Fund Order*), to determine the impact of Sprint's unjustifiable delay in asserting its claims, and to address the prospective relief that Sprint is seeking, which are all legal issues that require an exercise of the FCC's expertise and experience. The LECs argue that Sprint will not be unfairly disadvantaged by dismissal of its

4

Complaint, because any subsequent legal action will likely involve an appeal from the FCC's decision, not the present claims, even if the present claims become time-barred during the pending of administrative proceedings. Nevertheless, the LECs concede that, if I conclude that there would be some unfair disadvantage to Sprint, I could and should stay Sprint's action pending disposition of claims referred to the FCC.

In response, Sprint argues, in essence, that the FCC and the federal courts have already addressed the issues that the LECs want referred to the agency so that all that remains is for this court to apply those prior determinations. Indeed, Sprint argues that the impropriety of billing switched access charges for intraMTA calls has been apparent since the FCC's 1996 *Local Competition Order* and that the FCC clarified the impact of that order in its 2011 *Connect America Fund Order* by stating, categorically, that intraMTA calls are local traffic subject to reciprocal compensation, not long distance traffic subject to switched access charges. Sprint asserts that the federal appellate courts to consider the question are all in agreement, citing *Alma Communications Co. v. Missouri Public Service Comm'n*, 490 F.3d 619 (8th Cir. 2007); *Iowa Network Services, Inc. v. Qwest Corp.*, 466 F.3d 1091 (8th Cir. 2006); and *Atlas TelephoneCo. v. Oklahoma Corp. Commission*, 400 F.3d 1256 (10th Cir. 2005).

In reply, the LECs argue that Sprint ignores the federal law that controls the compensation arrangements between LECs, like themselves, and IXCs, such as Sprint. They point out that Sprint cites to cases and quotes parts of FCC orders related to compensation arrangements *between LECs and cellular service (CMRS) providers*, but does not address the law that governs compensation between LECs and IXCs. They point out that the FCC's 1996 *Local Competition Order*, on which Sprint relies, expressly states that (i) the FCC's existing rules for compensation arrangements between LECs and IXCs would continue to apply to IXCs that routed intraMTA traffic over switched access service arrangements that the IXCs purchased from the LECs' tariffs, and (ii) those IXCs

5

would continue to be required to pay the LECs' tariffed access charges applicable to those services. They argue that the FCC's 2011 *Connect America Fund Order* also does not apply to compensation arrangements between a LEC and an IXC, but between a CMRS provider and a LEC. Likewise, they argue, the decisions of the Circuit Courts of Appeals on which Sprint relies do not relate to the issues of compensation arrangements between a LEC and an IXC for intraMTA traffic. Finally, they point out that Sprint has never requested local compensation arrangements in all the years since the 1996 *Local Competition Order* on which it now relies, so that its claims are barred.

2. *Discussion*

a. *The primary jurisdiction doctrine*

As the Eighth Circuit Court of Appeals has succinctly explained,

> Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). The doctrine "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). Primary jurisdiction "promotes uniformity, consistency, and the optimal use of the agency's expertise and experience." *[United States v.] Henderson*, 416 F.3d [686,] 691 [(8th Cir. 2005)].

*United States v. Rice*, 605 F.3d 473, 475 (8th Cir. 2010). The Eighth Circuit Court of Appeals has recognized, however, that "[t]he doctrine is to be 'invoked sparingly, as it often results in added expense and delay.'" *Alpharma, Inc. v. Pennfield Oil Co.*, 411

F.3d 934, 938 (8th Cir. 2005) (quoting *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 477 (8th Cir. 1988)).

The Eighth Circuit Court of Appeals has made clear that "[t]he doctrine targets *issues*." *Rice*, 605 F.3d at 476 (emphasis in the original). Thus, there must be an issue that the district court could "refer" to the administrative agency under the "primary jurisdiction doctrine." *Id.* (citing *Reiter*, 507 U.S. at 268 and n.3). The question is whether the case would require the court to "decide any issues on which an administrative ruling would be appropriate," and, more specifically still, an issue "suited to the 'expert and specialized knowledge of the [agency].'" *Id.* at 476 (quoting *W. Pac. R.R.*, 352 U.S. at 64). Disputed factual issues are not properly ones within agency expertise, such that they should be referred to an agency pursuant to the "primary jurisdiction doctrine," because such issues properly fall within the function of a jury. *Henderson*, 416 F.3d at 691. Moreover, "expert consideration and uniformity of resolution" by an agency are not required where the issue presented merely turns on the meaning of published agency regulations, because interpretation of such materials "is well within the 'conventional experience of judges.'" *Alpharma, Inc.*, 411 F.3d at 939 (quoting *Access Telecomm. v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998)).

On the other hand, where determination of the scope and application of agency regulations requires agency expertise, referral pursuant to primary jurisdiction is appropriate. *Id.* (contrasting a determination of whether a competitor's product had received FDA approval for certain uses, which turned on the meaning of agency publications, and, thus, was not appropriate for referral to the FDA, with the question of whether the competitor's product *should have been approved as safe and effective*, which was a question that required the FDA's scientific expertise, although that question had not been raised in the case). Similarly, "application of the [primary jurisdiction] doctrine is appropriate when policy considerations are at issue," *Atlantis Express, Inc. v. Standard*

7

*Transp. Servs., Inc.*, 955 F.2d 529, 532-33 (8th Cir. 1992), such as when resolution of the issue could have an impact on future viability of regulated businesses or how they conduct their business. *Id*. at 535 (remanding with directions to refer to the Interstate Commerce Commission (ICC) the question of whether a licensed freight broker, which arranged transportation services on behalf of shippers and carriers, should be liable for certain freight charges and, if so, what the amount of this liability would be).

### b. Is referral to the agency appropriate?

If this case merely involved the interpretation and application of prior FCC rulings and case law, as Sprint contends, then dismissal or a stay and referral to the FCC under the "primary jurisdiction doctrine" would be inappropriate. *See Alpharma, Inc.*, 411 F.3d at 939. This is not such a case, however.

First, contrary to Sprint's repeated representations, neither the FCC's 1996 *Local Competition Order* nor its 2011 *Connect America Fund Order* expressly applies to compensation between a LEC and an IXC for intraMTA calls. As the LECs point out, the 1996 *Local Competition Order* distinguishes between service arrangements between LECs and CMRS providers and service arrangements between LECs and IXCs, and did *not* apply its conclusion that service arrangements involving intraMTA traffic between CMRS providers and LECs are subject to reciprocal compensation, not access charges, to service arrangements involving such traffic between LECs and IXCs. *See* 1996 *Local Competition Order*, 11 FCC Rcd 15499, ¶ 1043 (establishing new rules for compensation between LECs and CMRS providers). Likewise, the 2011 *Connect America Fund Order* only "clarified" payment arrangements between LECs and CMRS providers, but did not address payment arrangements between LECs and IXCs. *See* 26 FCC Rcd 17663, ¶ 1007 n.2132.

Second, the federal appellate decisions on which Sprint relies also *do not* involve interpretation or policy analysis of FCC regulations regarding payment arrangements

between LECs and IXCs. The Eighth Circuit Court of Appeals explained that, in *Iowa Network Services, Inc. v. Qwest Corp.*, 466 F.3d 1091 (8th Cir. 2006) (*INS*), it had "held that an intermediary carrier was not required to pay access charges for cell-phone to land-line calls originating and terminating within a major trading area." *Alma Commc'ns Co. v. Missouri Public Serv. Comm'n*, 490 F.3d 619, 625 (8th Cir. 2007) (summarizing the decision in *INS*). Nevertheless, the decision in *INS* turned on the following lacuna in FCC regulation, which a *state* agency had filled:

> In the absence of a clear mandate from the FCC or Congress stating how charges for this type of traffic should be determined, or what type of arrangement between carriers should exist, the Act has left it to the state commissions to make the decision, as long as it does not violate federal law and until the FCC rules otherwise. . . . As the IUB acted within its power under statute, we find no error.

*INS*, 466 F.3d at 1097. Thus, *INS* cannot be read as a judicial conclusion that the FCC's regulations *require* reciprocal compensation between LECs and IXCs for the traffic in question. Also, *INS* involved litigation over compensation between *two intermediary carriers*, INS and Qwest, not between a LEC and an IXC or intermediary carrier. *Id.* at 1095 (noting that both Qwest and INS are intermediary carriers). *Alma Communications Company*, on which Sprint also relies, likewise did not involve litigation over compensation between a LEC and an IXC, but compensation between a LEC and a CMRS provider. *See* 490 F.3d at 620. The same is true of the out-of-circuit decision in *Atlas Telephone Company v. Oklahoma Corporation Commission*, 400 F.3d 1256, 1260 (10th Cir. 2005).

Moreover, the question of whether the same "reciprocal compensation" requirement that applies between a LEC and a CMRS should apply between a LEC and an IXC is not just a matter of "interpretation" of FCC rulings, but a determination of the scope and applicability of FCC rulings, which requires agency expertise. Consequently,

9

it is an appropriate issue for referral to the FCC under the "primary jurisdiction doctrine." *Alpharma, Inc.*, 411 F.3d at 939 (contrasting a determination of whether a competitor's product had received FDA approval for certain uses, which turned on the meaning of agency publications and was not appropriate for referral to the FDA, with the question of whether the competitor's product *should have been approved as safe and effective*, which was a question that required the FDA's scientific expertise, but which had not been raised in that case). That determination is fraught with policy considerations involving the impact of certain regulatory decisions upon the telecommunications industry that are also best considered by the appropriate agency. *See Atlantis Express, Inc.*, 955 F.2d at 535, 532-33 (remanding with directions to refer to the ICC the question of whether a licensed freight broker, which arranged transportation services on behalf of shippers and carriers, should be liable for certain freight charges and, if so, what the amount of this liability would be, because those issues involved the viability of a part of the industry and the impact of the regulations). This may be all the more true where, as here, the FCC ruling on which Sprint relies was handed down in 1996. Thus, Sprint did not seek application of the FCC ruling, as it now interprets it, to the current parties, for more than 18 years, which suggests that the interpretation of the FCC's ruling that Sprint presses is not as obvious as Sprint contends.

Under the circumstances presented here, the question of whether compensation between LECs and IXCs for the traffic in question is subject to reciprocal compensation or filed tariffs is one properly referred to the FCC under the "primary jurisdiction doctrine."

### c. *Is dismissal or a stay appropriate?*

The LECs seek dismissal of Sprint's Complaint upon referral of issues to the FCC under the "primary jurisdiction doctrine," at least in the first instance, but they concede that a stay would be acceptable, as well. Sprint argues that dismissal is not appropriate,

because the FCC does not have jurisdiction over the entire case. This contention apparently stems from Sprint's damages claim, because Sprint suggests that dismissal might preclude its damages claim, if the statute of limitations expires on its Communications Act claims before a ruling from the FCC. It is clear that either a dismissal or a stay is appropriate, once a district court has determined that it should refer issues to an agency under the "primary jurisdiction doctrine." *See Rice*, 605 F.3d at 475 (stating that a stay of further proceedings is appropriate to give the parties a reasonable opportunity to seek an administrative ruling (citing *Reiter*, 507 U.S. at 268)); *Henderson*, 416 F.3d at 691 (explaining that the district court has the power to dismiss or stay the action in deference to administrative agency proceedings). What is less clear from decisions of the Eighth Circuit Court of Appeals is when and how the district court should decide whether to dismiss or stay the action before it. Whatever factors may be appropriate in that calculus, the one I find determinative here is that there is some possibility that the statute of limitations could run on Sprint's damages claim, while the FCC considers the regulatory issues, if its Complaint is dismissed. Consequently, I will stay this action, rather than dismiss it, pending completion of FCC proceedings.

### C. Other Grounds For Dismissal

The LECs also sought dismissal of Sprint's claims pursuant to Rule 12(b)(6), on the grounds that Sprint's claims are barred by application of the "filed rate doctrine" and "the voluntary payment doctrine." The FCC's determination of whether reciprocal compensation or tariffed access charges are applicable to the traffic in question between a LEC and an IXC will necessarily determine whether the "filed rate doctrine" applies and will necessarily determine whether there are any "voluntary payments" for Sprint to attempt to recoup. Therefore, I will not reach these separate grounds for dismissal of Sprint's Complaint.

### III. CONCLUSION

Upon the foregoing,

1. The defendant LECs' July 14, 2014, Motion To Dismiss Or Stay And Refer Issues To The Federal Communications Commission (docket no. 8) is **granted in part, denied in part, and reserved in part**, as follows:

   a. The part of the Motion seeking a referral to the FCC of the issue of whether reciprocal compensation or tariffed access charges determine the compensation between the LECs and Sprint, an IXC, for the traffic in question is **granted**;

   b. The part of the Motion seeking dismissal of Sprint's Complaint upon referral to the FCC is **denied**;

   c. The part of the Motion seeking a stay of this action upon referral to the FCC is **granted**; and

   d. **Ruling is reserved** on those parts of the Motion seeking dismissal of Sprint's claims pursuant to Rule 12(b)(6), on the grounds that Sprint's claims are barred by application of the "filed rate doctrine" and "the voluntary payment doctrine."

2. The question of whether reciprocal compensation or tariffed access charges determine the compensation between the LECs and Sprint, an IXC, for the traffic in question is **referred** to the FCC as a matter within that agency's primary jurisdiction; and

3. This action is **stayed** pending completion of administrative proceedings before the FCC on the question of whether reciprocal compensation or tariffed access charges determine the compensation between the LECs and Sprint, an IXC, for the traffic in question.

4. The parties shall file **a status report** concerning the need for additional proceedings in this court, if any, upon conclusion of the administrative proceedings.

**IT IS SO ORDERED**.

**DATED** this 6th day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA